## JONES *v.* MONTAGUE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF VIRGINIA.

No. 189. Argued April 4, 5, 1904.—Decided April 25, 1904.

Where the case is one in prohibition, and it appears by conclusive evidence
*aliunde* that since judgment by dismissal in the lower court the thing
sought to be prohibited has been done and cannot be undone by any
order of court, there is nothing remaining but a moot case and the writ
of error will be dismissed. *Mills* v. *Green*, 159 U. S. 651.

On November 14, 1902, plaintiffs in error filed in the Circuit
Court of the United States for the Eastern District of Virginia,
in behalf of themselves and others similarly situated, their
petition for a writ of prohibition. The petition set forth that
the petitioners were citizens of the United States, citizens and
residents of the State of Virginia, and of the third Congressional
district of that State, and entitled to vote at the election held
on November 4, 1902, for a member of the House of Repre-
sentatives of the United States from that district; that they
applied to the proper registration board for registration and
were refused. It was further alleged that in 1901 a constitu-
tional convention was assembled in Virginia; that it framed a
new constitution; that it did not submit such constitution to
the people for approval, but by a vote of forty-seven to thirty-
eight ordained it as the organic law of the State. Attached to
the petition were copies of the constitution, of a schedule making
provisions for putting in force the new constitution without
inconvenience, and of an ordinance providing for the registra-
tion of voters, all of which were adopted by the same conven-
tion. The petitioners also charge that the purpose of the
party in power was the disfranchisement of the colored voters
of the State, and specifically set forth how this disfranchise-
ment was to be accomplished. They averred that at the
election held on November 4, 1902, only the registration lists
provided for by the ordinance were recognized; that abstracts

of the votes cast in the several cities and counties were certified to the Secretary of the Commonwealth, at Richmond, Virginia, and that the defendants, as the board of state canvassers, would assemble on the twenty-fourth of November, 1902, and would, unless prohibited, canvass the election returns, declare the result and give certificates to the parties found to be elected. The prayer of the petition was that a writ of prohibition issue to the defendants "prohibiting them, and each of them, from considering, canvassing, counting, determining upon, or certifying or otherwise acting upon, any returns or abstracts of returns in the office of the Secretary of the Commonwealth of Virginia, purporting to be returns of election held in the State of Virginia, Tuesday, November 4, 1902, for representatives in Congress from the State of Virginia, or in any wise dealing with or certifying the results of said returns as returns of a lawful election, held in Virginia on the date aforesaid. That by reason of the matters and things hereinabove set forth, said pretended election, and any and all precinct, county, district or state returns made thereunder, may be held to be null, void and of no effect, and the said board of state canvassers, and the members thereof, may be prohibited from in any wise proceeding to act upon the same as lawfully before them for their consideration. That pending the hearing, and until the final decision upon this petition for said writ of prohibition, an order may be granted by this honorable court suspending any and all proceedings, on the part of said board of state canvassers and the members thereof, upon any and all of the matters sought to be prohibited until the final decision, of this cause. And for such other and further orders in the premises as shall and may make the prayer of your petitioners effectual."

After answer by defendants the writ of prohibition was denied by the Circuit Court and the petition dismissed. The dismissal was based on a want of jurisdiction, whereupon the petitioners brought the case on error directly to this court. A motion has here been made to dismiss the writ of error on the

ground that everything sought to be prohibited has already been done, and that there is nothing upon which any order of the court can operate. In support of the motion an affidavit of the Secretary of the Commonwealth has been filed, to the effect that after the dismissal of the petition by the Circuit Court the board of canvassers convened at the office of the Secretary in accordance with the law of the State, and upon the returns then on file canvassed the votes, determined the parties found by such canvass to have been elected, and that a certificate to that effect had been prepared and transmitted to each of the persons declared to have been elected a representative in Congress from the State of Virginia.

*Mr. John S. Wise* for plaintiffs in error:

As to the motion to dismiss:

The motion is founded upon a misapprehension of the character of the relief sought in the two proceedings. The fact that the Board of State Canvassers, after the decisions, did a particular act, does not destroy either the substance of the petition or complaint, or the continuing character of the injury sought to be redressed. Both the bill and the petition sought relief from the continuing oppression of a conspiracy, to which the defendants were parties.

The effect of the operations of the conspiracy upon the plaintiffs and the class on behalf of which the petition and complaint were exhibited, was to disregard their lawful registration and right to vote, and the laws permitting them to do so; to have the false returns so made up, certified to this State Board of Canvassers, and to have these defendants, as participants in the conspiracy, recognize those false returns as lawful and compute results from them.

The substance of the injury complained of was not the single threatened act of counting the returns of that particular election, but the threatened recognition by the defendants, as the law of the State, of invalid acts, ordinances and schedules of a convention, for their guidance then and thereafter; under

which recognition the class complaining would then and there-after be deprived of their voice in the political affairs of the State.

The law complained of was a continuing law; the injury complained of was a continuing injury; the test of the validity of the law, while it arose on an attempt to prevent that particular act, cannot be evaded, if the decision below was erroneous, by pleading that the particular act complained of has been accomplished before the error is reversed.

The appeal should not be dismissed, because, before it was made effectual, the first injury was accomplished to the complaints, and it is manifest that if it was an injury, it is only the first of a series of injuries to be inflicted upon them, unless the defendants are enjoined. The case is not at all like those in which a single act is the subject of injury. The defendants are a continuous body, with continuous duties of identically the same character as each function is performed, and those duties are dependent for their validity upon the validity of the law under which the returns are made to them. The rights of the parties complainant are continuous rights and rights of a recurring nature of which they are deprived at recurring intervals, so long as the defendants are allowed to invoke and act under a void law. If those laws are invalid, it would be impossible, upon the contention of the defendants, to test them, so long as the court below should continue to decide in defendants' favor; for each time a bill or petition was exhibited the writ would be denied, the act would be done and nothing would be left to bring up here, if the point of defendants be well taken.

*Mr. William A. Anderson* and *Mr. Frank W. Christian* for defendants in error:

As to motion to dismiss:

Everything sought to be prohibited in this proceeding has already been done, and nothing remains upon which any order of the court can operate.

After the lower court refused the prohibition prayed for in this case, the Board of State Canvassers of Virginia met and canvassed the returns for members of the House of Representatives, and the Secretary of the Commonwealth of Virginia issued writs of election to the members of the House of Representatives elected at such election. This court should take judicial notice of these facts.

The suggestion made by opposing counsel that the proceeding involves the validity or invalidity of the election held in November 4, 1902, and the Constitution and ordinance of registration of Virginia, and, therefore, the future rights of the complainants, is without force; for it is manifest that a decree adjudicating those questions would be merely upon abstract or moot questions; and it has been uniformly held that the court will not undertake to pass upon such questions. We, therefore, submit that this writ of error will be dismissed upon the ground above stated. See *Mills* v. *Green,* 159 U. S. 651, and cases cited; *United States* v. *Hoffman,* 4 Wall. 158.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

*Mills* v. *Green,* 159 U. S. 651, is decisive, and compels a dismissal of the writ of error. That was a suit in equity, alleging the calling of a convention to revise the constitution of South Carolina and seeking to enjoin an alleged illegal, partial and void registration by which the plaintiff, and others like him, would be deprived of the right to vote for delegates to the convention. An injunction was granted by the Circuit Court, but was dissolved by the Circuit Court of Appeals and the suit dismissed. Thereupon the election was held, the convention met and entered upon the discharge of its duties. An appeal to this court from the order of dismissal made by the Circuit Court of Appeals was dismissed on the ground that the object of the suit could no longer be attained. Mr. Justice Gray, delivering the opinion, said (pp. 653, 657, 658):

"The duty of this court, as of every other judicial tribunal,

is to decide actual controversies by a judgment which can be
carried into effect, and not to give opinions upon moot questions
or abstract propositions, or to declare principles or rules of law
which cannot affect the matter in issue in the case before it.
It necessarily follows that when, pending an appeal from the
judgment of a lower court, and without any fault of the defend-
ant, an event occurs which renders it impossible for this court,
if it should decide the case in favor of the plaintiff, to grant him
any effectual relief whatever, the court will not proceed to a
formal judgment, but will dismiss the appeal. . . . . In
the case at bar the whole object of the bill was to secure a
right to vote at the election, to be held, as the bill alleged, on
the third Tuesday of August, 1895, of delegates to the constitu-
tional convention of South Carolina. Before this appeal was
taken by the plaintiff from the decree of the Circuit Court of
Appeals dismissing his bill, that date had passed; and, before
the entry of the appeal in this court, the convention had
assembled, pursuant to the statute of South Carolina of 1894,
by which the convention had been called. 21 Stat. S. C. pp.
802, 803. The election of the delegates and the assembling
of the convention are public matters, to be taken notice of by
the court, without formal plea or proof. . . . It is obvious,
therefore, that, even if the bill could properly be held to present
a case within the jurisdiction of the Circuit Court, no relief
within the scope of the bill could now be granted."

See also *Codlin* v. *Kohlhausen,* 181 U. S. 151; *Tennessee* v.
*Condon,* 189 U. S. 64.

The case before us is one in prohibition. It is so declared
by the petitioners in their petition, and the thing sought to
be prohibited was a canvass of the votes cast at the election
on November 4, 1902. The facts alleged in respect to the con-
stitution, the purpose of the dominant party, the action of the
convention, the refusal to submit the proposed constitution
to the vote of the people, and the registration ordinance, were
all stated for the purpose of showing that the election on No-
vember 4, 1902, was illegal, and that there ought to be no

canvass of the returns cast at that election. The prayer of the petitioners specifically is to retain such canvass. Even the general clause at the close of the prayer is "for such other and further orders in the premises as shall and may make the prayer of your petitioners effectual." But—as shown by the affidavit, and as indeed we might perhaps take judicial notice by the presence in the House of Representatives of the individuals elected at that election from the various Congressional districts of Virginia—the thing sought to be prohibited has been done and cannot be undone by any order of court. The canvass has been made, certificates of election have been issued, the House of Representatives (which is the sole judge of the qualifications of its members) has admitted the parties holding the certificates to seats in that body, and any adjudication which this court might make would be only an ineffectual decision of the question whether or not these petitioners were wronged by what has been fully accomplished. Under those circumstances there is nothing but a moot case remaining, and the motion to dismiss must be sustained.

*Dismissed without costs to either party.*